# Affidavit in Support of an Application
# for a Criminal Complaint

I, Robert Toler, being duly sworn under oath, do hereby depose and state:

1. I am a Special Agent with the United States Department of the Interior, National Park Service, Investigative Services Branch, presently assigned to the Atlantic Field Office in the Blue Ridge Parkway (BLRI). I have been employed as a federal law enforcement officer since 2012. During my tenure as a Law Enforcement Officer and Special Agent, I have completed approximately 1000 hours of instruction at the Federal Law Enforcement Training Center (FLETC) in Glynco, Georgia. I graduated from both the Land Management Police Training Program and the Department of the Interior Criminal Investigator Training Program. While at FLETC, I completed blocks of instruction and labs that enabled me to identify potential sources of electronic evidence, including but not limited to GPS, cell phones and user email accounts and social media. During all training programs, I studied various aspects of investigating and enforcing federal criminal laws. Throughout my career, I have investigated hundreds of criminal violations involving federal and state laws. I have been the lead case agent or assisted on investigations involving property crimes, violent and sexual assault crimes, and homicides. During this period of service, I have received formal training and investigative experience in general criminal statute enforcement, sexual assaults, death investigation, and traffic crash investigation.

2.      As part of my duties as a Special Agent, I investigate criminal violations of state and federal law, including kidnapping in violation of 18 U.S.C. § 1201, assault in violation of 18 U.S.C. § 113, and firearms offenses such as violations of 18 U.S.C. § 924. I have received formal training and investigative experience in general criminal statute enforcement, sexual assaults, death investigation, and traffic crash investigation.

3.      The facts and statements in this affidavit are based in part on information provided by other law enforcement officers and on my personal observations and training and experience as a Special Agent.  This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

4.      Based on my training and experience, and the facts as set forth in this affidavit, it is my belief that on September 28, 2023, within the special maritime and territorial jurisdiction of the United States and within the Western District of North Carolina, EVAN WILLIAM BLANKENSHIP violated 18 U.S.C. § 1201(a)(2), (d) (attempted kidnapping), 18 U.S.C. § 113(a)(2) (assault with intent to commit a felony), 18 U.S.C. § 113(a)(3) (assault with a dangerous weapon intent to do bodily harm), and 18 U.S.C. § 924(c)(1)(A)(iii) (discharge of a firearm during and in relation to a crime of violence).

5.      At approximately 3:15 a.m. on September 28, 2023, L.P. and L.M. were together at Water Rock Knob Overlook off the Blue Ridge Parkway, which is a place within the special maritime and territorial jurisdiction of the United States, and

within the Western District of North Carolina. They were alone there, parked in L.M.'s mother's car— L.M. in the driver's seat, and L.P. in the passenger seat. Suddenly, a white Chevrolet Camaro sped into the parking area. The driver accelerated around the parking lot once before heading toward L.M.'s car and abruptly stopping.

6. EVAN WILLIAM BLANKENSHIP got out of the Camaro, opened the passenger side door of L.M.'s car (where L.P. was sitting), and pointed a semi-automatic pistol at the couple. L.P. was scared that BLANKENSHIP would kill her. BLANKENSHIP then tried pulling L.P. out of the car by her hair and right arm. BLANKENSHIP repeatedly told her to get into his vehicle and that "she is coming with me." He threatened to hurt both L.P. and L.M. if she did not comply. She asked if he was taking her so that he could rape her. BLANKENSHIP nodded his head "yes."

7. BLANKENSHIP hit L.P. in the face causing temporary hearing loss in her left ear and bruising to her face. L.P. watched as BLANKENSHIP fired his gun at least once, possibly twice, into the air, before pointing it back at her and L.M..

8. The duration of the incident varied between L.P. and L.M.'s recollection, but they both indicated that L.M. was eventually able to convince BLANKENSHIP to let them go after repeatedly promising not to report the incident to the police.

9. L.M. drove them down the mountain as BLANKENSHIP followed close on their bumper. Despite the early morning hour, the pair eventually found law

enforcement. BLANKENSHIP followed them until Highway 74 and sped around them to leave.

10. L.P. spoke with investigators and described knowing BLANKENSHIP from previously "hanging out" on one occasion when they drove around for a few hours. BLANKENSHIP reportedly added L.P. on the Snapchat application about a year prior, and they had not known one another independent of Snapchat prior to their one contact. I know that Snapchat is a mobile application for cellular telephones which allows users to share photos, videos, text, location, and other data with friends on the application.

11. L.P. believed BLANKENSHIP was able to locate her the morning of the incident by using Snapchat's live location sharing feature, whereby her real-time location was visible to her friends on the application. Having met BLANKENSHIP only one time in person, L.P. said she was "9 out of 10" that it was BLANKENSHIP who confronted them that morning. L.M. did not personally know BLANKENSHIP but identified him as the perpetrator from a picture shown to him.

12. Investigators returned to the scene the next day to search for spent shell casings. They were unable to locate any.

13. BLANKENSHIP was interviewed on September 29. BLANKENSHIP initially stated he was at work during the time of this incident. When pushed about his whereabouts, he changed course and said he started drinking to excess on the September 27 and became intoxicated. When he woke up on the September 28, he

noticed his car was out of gas so he knew he had to have gone somewhere. BLANKENSHIP again claimed to have no recollection of these events.

14. Agents pressed him further to be remorseful and be honest. BLANKENSHIP said he would feel more comfortable if the interview was not recorded. Agents turned off their devices.

15. BLANKENSHIP then claimed he and L.P. were "friends with benefits" and had been exchanging nude photos. He admitted he texted L.P. around 10:00 p.m. on the September 27 to hang out. She told him she was tired and wanted to be at home. BLANKENSHIP claimed he was disappointed and began drinking heavily. While drinking, he noticed L.P.'s Snapchat location showed her on the Blue Ridge Parkway. This upset him, so he decided to go "scare her."

16. BLANKENSHIP admitted driving a white Camaro to the area where she was located and got out with his 9mm Glock in hand. He opened the passenger door and demanded that L.P. get in his car. He grabbed her by the hair and continued ordered her into his car. BLANKENSHIP said he slapped her when she reached for her phone.

17. BLANKENSHIP admitted he was angry and fired one round toward the ground. He noticed that the shell casing failed to extract from the chamber but continued to point the gun at L.M. and L.P.. Eventually, L.M. was able to convince him this was wrong, and BLANKENSHIP let them leave. He followed them down the Parkway, then texted L.P. not to mention the incident to anyone. He then changed the settings in Snapchat to immediately delete their messages.

18. At the time of his interview, BLANKENSHIP had a 9mm Glock in his Camaro. Officers asked to secure the weapon and then collect it as evidence. BLANKENSHIP allowed them to do so.

19. Based on the information set forth in this affidavit, I submit there is probable cause to believe that EVAN WILLIAM BLANKENSHIP has violated 18 U.S.C. § 1201(a)(2), (d) (attempted kidnapping), 18 U.S.C. § 113(a)(2) (assault with intent to commit a felony), 18 U.S.C. § 113(a)(3) (assault with a dangerous weapon intent to do bodily harm), and 18 U.S.C. § 924(c)(1)(A)(iii) (discharge of a firearm during and in relation to a crime of violence).

/s/ Robert Toler

Robert Toler
Special Agent
National Park Service

*This affidavit has been reviewed by AUSA Alex M. Scott.*

In accordance with Rule 4.1(b)(2)(A), the Affiant attested under oath to the contents of this Affidavit, which was submitted to me by reliable electronic means, on this 10th day of October 2023, at 3:31 PM.

Signed: October 10, 2023

W. Carleton Metcalf
United States Magistrate Judge